[Civ. No. 287.    Second Appellate District.—December 1, 1900.]

## W. R. ARNOLD, Respondent, v. H. J. WOOLLACOTT et al., Appellants.

BROKERS' COMMISSIONS—LEASEHOLD—FINDINGS AGAINST EVIDENCE— NONSUIT.—In an action to recover brokers' commissions against the owners of land for procuring a lessee, where the evidence shows without conflict that the owners proposed to pay an agreed commission if a tenant was secured at a specified rental, which was not complied with, and that he might procure an offer, and the only offers procured were delivered in good faith, and that ended further effort on the part of plaintiff and his assignee, the fact that subsequently

the offering party and the owners agreed upon terms between themselves would not entitle the plaintiff to recover commissions; and findings in his favor were against the evidence, and a motion for a nonsuit should have been granted.

ID.—PROCURING OF OFFERS FROM FORMER CLIENT—REJECTION—RIGHT OF CLIENT TO DISCONTINUE.—When the offers were procured from a former client of plaintiff's firm, whose offers were finally rejected, and checks tendered by him were returned to him, he had the right to discontinue employment of plaintiff's firm, and to negotiate thereafter on his own behalf, where no irrevocable agency had been given; and they could not thereafter make another offer from him without his consent.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial. D. K. Trask, Judge.

The facts are stated in the opinion of the court.

Lawler, Allen & Van Dyke, for Appellants.

The commission could not be recovered because the broker did not bring the minds of seller and buyer to meet. (*Sibbald* v. *Bethlehem Iron Co.,* 83 N. Y. 378, 38 Am. Rep. 441; *Chandler* v. *Sutton,* 5 Daly, 112; *Wylie* v. *Marine Nat. Bank,* 61 N. Y. 415; *Markus* v. *Kenneally,* 19 Misc. Rep. 517, 43 N. Y. Supp. 1056; *Dryer* v. *Rand,* 3 Daly, 439; *Alder* v. *Earle,* 121 N. Y. 688, 24 N. E. 705; *Douglas* v. *Halsted,* 81 Hun, 65, 30 N. Y. Supp. 592; *White* v. *Twitchings,* 26 Hun, 503; *Cardigan* v. *Crabtree,* 179 Mass. 474, 88 Am. St. Rep. 397, 61 N. E. 37; *Leonard* v. *Eldridge,* 184 Mass. 594, 104 Am. St. Rep. 545, 69 N. E. 337; *Zeimer* v. *Anticell,* 75 Cal. 509, 17 Pac. 642; *Mattingley* v. *Pennie,* 105 Cal. 514, 45 Am. St. Rep. 87, 39 Pac. 200; *Phelps* v. *Prusch,* 83 Cal. 626, 23 Pac. 1111; *Waterman* v. *Boltinghouse,* 82 Cal. 659, 23 Pac. 195; *Ayres* v. *Thomas,* 116 Cal. 140, 47 Pac. 1013; *Ropes* v. *John Rosenfeld's Sons,* 145 Cal. 671, 79 Pac. 367; *Brown* v. *Pforr,* 38 Cal. 550.) Where no time was fixed for the continuance of the contract by its terms, either party is at liberty to terminate at will, subject only to the ordinary requirements of good faith. (*Zeimer* v. *Anticell,* 75 Cal. 509, 17 Pac. 642; *Swain* v. *Barnette,* 89 Cal. 565, 571, 26 Pac. 1093; *Shankland*

v. *Hall,* 100 Cal. 26, 29, 34 Pac. 636; *Martin* v. *Ede,* 103 Cal. 157, 37 Pac. 199; *Ayres* v. *Thomas,* 116 Cal. 140, 144, 47 Pac. 1013; *Sibbald* v. *Bethlehem Iron Co.,* 83 N. Y. 378, 38 Am. Rep. 441.)

W. P. L. Stafford, and F. C. Austin, for Respondent.

The owner is liable to commissions if he sells to the broker's customer on the same terms for a less sum, before revocation of the authority. (*Bryan* v. *Abert,* 3 App. Cas. (D. C.) 180; *Smith* v. *Anderson,* 2 Idaho, 495, 21 Pac. 412; *Wood* v. *Wells,* 103 Mich. 320, 61 N. W. 503; *Plant* v. *Thompson,* 42 Kan. 664, 16 Am. St. Rep. 512, 22 Pac. 726; *Levy* v. *Coogan,* 16 Daly (N. Y.), 137, 9 N. Y. Supp. 534; *Corbet* v. *Beard,* 92 Iowa, 360, 60 N. W. 636; *Jones* v. *Heny,* 15 Misc. Rep. (N. Y.) 151, 36 N. Y. Supp. 483; *Ratts* v. *Shepherd,* 37 Kan. 20, 14 Pac. 496; *Martin* v. *Silliman,* 53 N. Y. 615; *Reynolds* v. *Thompkins,* 23 W. Va. 229; *Gregory* v. *Boner,* 135 Cal. 589, 67 Pac. 1038; *Carroll* v. *Pettit,* 22 N. Y. Supp. 250, 67 Hun, 418; *Sibbald* v. *Bethelehem Iron Co.,* 83 N. Y. 378, 38 Am. Rep. 441; *Dailey* v. *Young,* 37 N. Y. St. Rep. 903; *Ames* v. *McNally,* 6 Misc. Rep. (N. Y.) 93, 26 N. Y. Supp. 7; *Lynch* v. *McKenna,* 58 How. Pr. 42; *Goodwin* v. *Brennecke,* 47 N. Y. Supp. 266, 21 App. Div. 138; *Gibson* v. *Hunt* (Iowa), 94 N. W. 277; *Smith* v. *Smith,* 107 Mo. App. 1, 80 S. W. 686; *French* v. *McKay,* 181 Mass. 485, 63 N. E. 1068; *Martin* v. *Feegan,* 88 N. Y. Supp. 472, 95 App. Div. 654; *Hobbs* v. *Edgar,* 23 Misc. Rep. 618, 51 N. Y. Supp. 1120; *Snyder* v. *Fearer,* 87 Ill. App. 275; *Carroll* v. *Pettit,* 67 Hun, 418, 22 N. Y. Supp. 250; *Wilson* v. *Sturgis,* 71 Cal. 226, 16 Pac. 772; *Phelan* v. *Gardiner,* 43 Cal. 306; *Blood* v. *Shannon,* 29 Cal. 393; *Rees* v. *Spruance,* 45 Ill. 308; *Hanna* v. *Collins,* 69 Iowa, 51, 28 N. W. 431; *Heffner* v. *Chambers,* 121 Pa. St. 84, 15 Atl. 492; *Lynch* v. *McKinne,* 58 How. Pr. 42; *Sussdorff* v. *Schmidt,* 55 N. Y. 319.)

SMITH, J.—This is an appeal from a judgment for the plaintiff, and from an order denying the defendants' motion for a new trial. The complaint alleges that the plaintiff with his assignor, as copartners and brokers, procured a tenant for

the defendants for the two upper floors of the building in the city of Los Angeles known as "Leonide," and that defendants promised and agreed to pay the plaintiff and his copartner therefor a commission of one and one-half per cent of the aggregate rentals to accrue during the term of the lease, amounting to $378, no part of which has been paid, etc. The court finds these allegations to be true, and also finds the specific facts of the transaction as it understood them. But the case presented by the evidence, in which there is no material conflict, is, we think, essentially different from the case found, and is as follows:

The transaction under which the plaintiff's cause of action grew is thus detailed by the plaintiff—referring to his first interview with Mr. Woollacott touching the renting of the building in question, and to a pending offer from another party on which a deposit had been paid: "I asked him if he was in a position to consider an offer from another party, and he said he was. I asked him what rent he wanted, and he told me $450 a month. I told him then I thought the rent was too high, he would not be able to secure it. He told me it might be so, but to bring him an offer if we could get one. I then spoke to him and asked him what commission he would be willing to pay if we were successful in procuring a tenant, and he asked me what we would charge and I told him one and one-half per cent on the entire amount. He said that was satisfactory. . . . I told him I would endeavor to secure him a tenant."

Plaintiff then presented the matter to one Grider, by whom the firm had been previously employed, advising him to rent the building; and accordingly two written offers were made accompanied by Mr. Grider's check in each case for two months' rent. The second offer was made May 12th and proposed to rent the building for $372 a month for the year ending January 1, 1906, and $403 per month for the remaining portion of the term. In the concluding paragraph of this offer is contained the statement: "This order is made for immediate acceptance." The previous offer was in the same terms, except the amounts of rental proposed, which were less. When the second offer was declined, plaintiff reported the matter to Grider and returned to him his check. On this

occasion he testifies: "I urged upon him to increase his offer. He didn't give me any positive assurance that he would or would not. In fact, he seemed at that (time) rather adverse to increasing his offer. I believe he stated at that time that he had offered all the building was worth."

Afterward, "in the latter part of May or the early part of June," the plaintiff learned that Mr. Grider had leased the building, and thereupon called upon the defendant Woollacott, who admitted the fact. The date of the lease was July 15th, but the oral agreement for the lease had, perhaps, been consummated sometime previously. The plaintiff claimed he was entitled to commission, which the defendants denied. Grider, as a witness for the plaintiff, testifies that when the declination of his second offer was reported to him by Cason & Arnold, "they asked me . . . did I want to make another proposition. They returned the checks. I told them no, I thought I had come up as high as I could on the lease. . . . When they returned the checks, . . . I said in a business way that ended it with me: I had nothing to say and I immediately figured with Mr. Cason on other property."

It also appears from the testimony of Grider, as well as from that of the defendant Woollacott, that prior to Woollacott's employment of Cason & Arnold, Grider had examined the building with a view to leasing it and obtained from Woollacott the terms on which he proposed to lease it; which, apparently, Grider thought were too high. The plaintiff's partner, Cason, was also examined, but his testimony adds nothing to that of the plaintiff. A motion for a nonsuit was made by the defendants on appropriate grounds and denied.

This, we think, should have been granted. There was a proposition upon the part of the defendants to the plaintiff's firm that they would pay the agreed commission upon their procurement of a tenant at the rental of $450 a month; but nothing was done by the plaintiff's firm to meet this proposition. There was also a proposition from the defendants that plaintiff's firm might "bring (them) an offer if (they) could get one." This, if accepted, would have equally entitled the firm to its commission; and accordingly the firm did make to the defendants the two propositions of Grider. But these were finally declined. This, we think, ended the

matter.    It was optional with Grider to discontinue the agency of the plaintiff's firm, and this he did.    It might have been otherwise had an irrevocable agency been given to them.    Nor were the defendants at all concerned with the relations between him and the plaintiff's firm.    They had authorized the firm to make them an offer.    This had been done and they declined it.    When Grider came to him, therefore, several weeks after these offers had been declined, unless he had notice of some existing relation between the firm and Grider giving them the exclusive agency for him, they were at liberty to deal with him.    Nor is there any evidence in the record of bad faith on their part, or that of Grider; or of any fraudulent combination between them to defeat the rights of plaintiff's firm to a commission, assuming that it had any.    It may be added that during the period of more than two months elapsing before the execution of the lease to Grider, no other offer had been made by the plaintiff's firm. Nor was it in their power to make a proposition for Grider without his concurrence.

The judgment and order appealed from are reversed.

Gray, P. J., and Allen, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 28, 1907.